EXHIBIT 8

## RESIDENTIAL SERVICES AGREEMENT
### BETWEEN MISSISSIPPI DEPARTMENT OF CORRECTIONS
### AND
### EAST MISSISSIPPI CORRECTIONAL FACILITY AUTHORITY

This Residential Services Agreement is made and entered into on this ___ day of August 2012, with an effective date of July 19, 2012, by and between the MISSISSIPPI DEPARTMENT OF CORRECTIONS, located at 723 North President Street, Jackson, Mississippi 39202 and EAST MISSISSIPPI CORRECTIONAL FACILITY AUTHORITY, a public body corporate and politic created under the authority of House Bill 1719, Local and Private Laws of the 1996 Regular Session of the Mississippi Legislature with its mailing address being Post Office Box 1310, Meridian, Mississippi 39302.

### WITNESSETH:

WHEREAS, the MDOC and the Authority desire to enter into a Residential Services Agreement effective July 19, 2012 for the operation and management of a secure correctional facility for adult male inmates (hereinafter the "Facility") located in Lauderdale County, Mississippi;

WHEREAS, the Authority was created by Lauderdale County, Mississippi (the "County") under the authority of the House Bill 1719, Local and Private Laws of the 1996 Regular Session of the Mississippi Legislature, as a public body corporate and politic to, among other things, design, finance, own and operate a correctional facility for MDOC's system in Lauderdale County, Mississippi (the "Facility");

WHEREAS, pursuant to House Bill 1719, as amended, and Sections 47-5-943, 47-5-945 and Sections 47-5-1211 through 47-5-1227 of the Mississippi Code of 1972, as amended, MDOC may contract with the Authority for the private incarceration of not more than one thousand five hundred (1,500) offenders at the Facility;

WHEREAS, the Authority is authorized to contract with a private entity for the management and operation of the Facility; and on the recommendation and direction of MDOC has contracted with Management & Training Corporation ("MTC") for private management and operation of the Facility effective July 19, 2012; and

WHEREAS, the Department desires to house up to one thousand five hundred (1,500) Inmates at the Facility, and the Authority agrees to accept said Inmates.

NOW, THEREFORE, for and in consideration of the promises and the mutual covenants contained herein, the parties agree as follows:

EXHIBIT
**A**

1

## ARTICLE I

### DEFINITIONS

In addition to those terms defined in the Preamble and elsewhere herein, in this Agreement:

ACA – shall mean the American Correctional Association.

ACA Standards – shall mean the ACA Standards for Adult Correctional Institutions (4th Edition) (as same may be modified, amended, or supplemented in the future) published by ACA.

Act – shall mean Sections 47-5-1201 et. seq., 47-5-943 et. seq., Mississippi Code of 1972, as amended, and House Bill 1719, Local and Private Laws of the 1996 Regular Session of Miss. Legislature.

Additional Services – means those additional operational and management services required to be furnished to the Authority because of the changes in the ACA Standards, laws, government regulations, or judicial decisions which cause an increase in the cost of operating and managing the Facility.

Agreement – means this Residential Services Agreement.

"Authority" – means the East Mississippi Correctional Facility Authority.

Contract – means this Agreement.

Contract Monitor – means the person designated by MDOC, pursuant to Section 47-5-1223 of the Act to monitor compliance with this Agreement.

Facility – means the medium security correctional building(s) constructed in Lauderdale County, Mississippi, known as the "East Mississippi Correctional Facility" plus any expansions made to said buildings from time to time and its grounds.

Facility Operator – means the private entity with whom the Authority contracts for the management and operation of the Facility, which is MTC effective July 19, 2012.

Force Majeure – means the failure to perform any of the terms and conditions of this Agreement resulting from acts of God, storm, fire, casualty, war or national emergency.

Inmate – shall include any male person committed in accordance with applicable laws of the State of Mississippi, and assigned to the Facility for incarceration therein pursuant to this Agreement.

Inmate Day – means each 24-hour period an Inmate is admitted to the Facility, plus the first day of incarceration, but not the last.

2

MTC 001401

<u>Inmate Information System</u> – means that software utilized by the Facility Operator at the Facility.

<u>Inmate Per Diem Rate</u> – means the fees payable by the Department pursuant to Section 6.1 of this Agreement.

<u>Inmate Population</u> – means, as of a day, the total Inmate population reflected in the Midnight Strength Report for such day.

<u>Lease Agreement or Lease</u> – means the Third Amended and Restated Lease Agreement between the Authority and MDOC, dated July 20, 2010 as may be amended at any time and from time to time without limitation.

<u>MDOC</u> – means the Mississippi Department of Corrections.

<u>Parties</u> – means MDOC and the Authority, jointly.

<u>Special Privileges</u> – means rights, entitlements, rewards, or standards relaxation or reduction to or for inmates which are different than those required or approved by the Department, relevant federal authority or authorized mental or physical health professional.

<u>Services Commencement Date</u> – means the date on which the Authority shall begin providing management and operations services at the Facility pursuant to this Agreement, which date shall be the first day that Inmates are assigned by MDOC and incarcerated by the Authority at that Facility under this Agreement.

<u>Standards</u> – means the American Correctional Association Standards, applicable court orders, state laws and federal constitutional standards with any deviations or waivers from those standards in design or management that are necessary for the operation of this Facility. When differences exist between the court requirements and the ACA standards, the higher standard, as defined by MDOC, will prevail.

<u>State</u> – means the State of Mississippi and/or the Mississippi Department of Corrections, as applicable.

<u>Unforeseen Circumstances</u> – means those acts or occurrences beyond the reasonable contemplation of the parties at the time of the execution of this Agreement which materially alter the financial conditions upon which this Agreement is based; provided that such acts shall not include (i) inflation as contemplated by Section 6.4, or (ii) acts within the control the party claiming unforeseen circumstances.

<u>Use of Force</u> – means force as contemplated by the ACA, Adult Correctional Institutions Standards and those set forth in the Act (§47-5-1215 and Section 8 of House Bill 1719), as the same may be amended, from time to time.

3

## ARTICLE 2

## TERM OF THE AGREEMENT

SECTION 2.1    Term.

A. The term of this Agreement shall be for a period of ten (10) years commencing on July 19, 2012 and ending on July 18, 2022. This Agreement is subject to annual appropriations as set forth in Section 8.6 of this Agreement.

B. Either party may terminate this Agreement for convenience with ninety (90) days written notice.

## ARTICLE 3

## INMATES

SECTION 3.1    Inmate Housing.

The Authority agrees to provide housing at the Facility for Inmates, as provided in the Act. In the event that the Facility is expanded and/or more bed space becomes available, and subject to approval by the State Legislature, if necessary, the Authority and the MDOC may agree to house as many additional Inmates as the expansion and/or additional bed space provides. Only MDOC Inmates shall be housed in the Facility unless MDOC shall consent otherwise.

SECTION 3.2    Assignment of Inmates.

MDOC agrees to assign to the Facility the Inmate custody and population levels described in Exhibit A. MDOC guarantees payment of 100 percent of the population levels listed in Exhibit A, regardless of the actual population level. MDOC will furnish to the Authority the following documentation:

a) Complete information and documentation relating to the Inmate's case history and physical, mental and clinical records that are in the custody of MDOC;

b) Applicable judicial and administrative rulings; the sentence or sentences for which the Inmate is confined;

c) Orders including transfers, relating or pertaining to the Inmate;

d) Any other requested information which will assist the Authority in performing its duties;

e) The Authority agrees that all Inmate records are to remain confidential and are not to be released without the approval of MDOC, unless otherwise required by applicable laws, rules or regulations.

4

MTC 001403

Upon release or transfer of an Inmate from the Facility, all of said Inmate's records furnished by MDOC will be promptly returned to MDOC, without any cost to MDOC.

SECTION 3.3    Delivery and Release of Inmates.

Upon proper notification by MDOC and an authenticated copy of the mittimus or other commitment order, or any other official papers or documents authorizing confinement, the Authority will transport the Inmate from any MDOC facility to the Facility. Once the Authority has received the proper court orders and/or MDOC documentation regarding an Inmate's release from the Facility, then the Authority will process the Inmate for release in accordance with MDOC policies and procedures.

## ARTICLE 4

## OPERATION OF FACILITY

SECTION 4.1    General Duties.

The Authority shall cause the services listed herein to be performed by an agreement with the Facility Operator, who shall perform said services on behalf of the Authority.  MDOC shall verify and confirm that the Facility Operator is in full compliance with the services and requirements contained herein.  The Authority, by agreement with a private entity who shall act on behalf of the Authority, shall maintain and manage the Facility in compliance with applicable federal (including without limitation tax laws and regulations applicable to the Facility and its operation) and State laws, court orders and ACA Standards. If there exists a difference between the above standards and/or laws, the higher standard will be followed. All official communications shall be managed according to policies to be adopted by all parties.

The Authority will confine the Inmates sent by MDOC, and subject to Sections 4.7 and 4.8, give them reasonable and humane care and treatment, provide appropriate programs and training, supervise them, and maintain discipline and control consistent with constitutional standards. The Authority will provide no Special Privileges to the Inmates and shall see that the sentences of the committing court in the State are faithfully executed.

The Lease Purchase Agreement imposes certain obligations and duties upon MDOC and the Authority in the event that a Residential Services Agreement is not in force and effect.  To the extent any such duty or obligation is not specifically addressed in this Agreement, MDOC shall retain and be responsible for performance of and compliance with such obligations and duties.

SECTION 4.2    Admitting and Booking.

The Authority shall be responsible for admitting and booking Inmates placed in the Facility. Inmates will be admitted to the Facility under the terms of this Agreement upon receipt of the appropriate MDOC documentation.

MTC 001404

SECTION 4.3    Safety and Emergency Procedures.

The Authority shall maintain procedures to provide for emergencies such as labor disputes, riots; fire and civil disaster and changes in such procedures shall be submitted to and approved by MDOC prior to implementation, which approval shall not be unreasonably withheld. The Authority shall operate and maintain the Facility in compliance with applicable federal, state and local safety and fire codes and in accordance with ACA Standards.

SECTION 4.4    Sanitation/Hygiene/Accommodations.

The Authority will implement policies and procedures in conformity with applicable ACA Standards, regulations, laws and codes mandated by county, state and federal governmental agencies to ensure that the Facility meets sanitation standards. The Authority shall provide hygiene items in compliance with MDOC policies and procedures.

SECTION 4.5    Recreation.

The Authority will provide exercise and other activities in compliance with ACA Standards. The recreational program will include both indoor and outdoor activities.

SECTION 4.6    Inmate Legal Assistance.

The Authority shall establish and maintain an Office of Inmate Legal Assistance in accordance with MDOC policies and procedures consistent with ACA Standards and applicable court orders to include adequate and sufficient access to the courts.

SECTION 4.7    Counseling/Mental Health.

The Authority shall not be responsible or liable for providing counseling and/or mental health programs, which services shall be the responsibility of MDOC.

SECTION 4.8    Medical/Dental.

The Authority shall not be responsible or liable for providing medical, mental health, optometry, pharmaceutical, dental or similar services, which services shall be the responsibility of MDOC.

MDOC shall provide security and control of Inmates for outpatient needs and/or hospitalization.

SECTION 4.9    Food Service.

The Authority will provide food services in accordance with ACA Standards. At a minimum, the food service operation shall provide a meal schedule, special diets meeting medical or religious requirements and three (3) meals served at regular times during each twenty-four (24) hour period. There shall be no more than fourteen (14) hours between the evening meal and breakfast. The Authority will provide for at least 2900 calories per day per Inmate, as certified by a nutritionist for the Authority and consistent with applicable MDOC policies and procedures.

6

SECTION 4.10    Clothing and Laundry.

The Authority shall furnish all Inmate clothing in accordance with MDOC classification procedures and ACA Standards and replacement clothing, and will provide laundry services for the Inmates.

SECTION 4.11    Transportation.

The Authority shall provide transportation services for (1) the Inmates, including delivery from an MDOC facility to the Facility, release from the Facility to MDOC, and transportation (to and from location only) for medical needs, and (2) transporting supplies to the Facility.

SECTION 4.12    Inmate Canteen.

The Authority will provide a canteen in accordance with ACA Standards and State law. The Authority will continue to interface with MDOC's canteen system. MDOC will reimburse the Authority for canteen-related expenses, pursuant to MDOC policy through the "Inmate Welfare Fund".

SECTION 4.13    Mail.

The Authority will provide delivery of mail to Inmates in the Facility in compliance with ACA Standards, MDOC policy and procedures and applicable State or federal laws.

SECTION 4.14    Religion.

The Authority will provide adequate space within the Facility for religious services to be held and provide programs in compliance with applicable ACA Standards, State and federal laws and applicable court orders.

SECTION 4.15    Facility Supplies.

The Authority will provide facility supplies, which include general hygiene items, office supplies and building support items such as cleaning supplies, mops, buckets, linens, paper towels, etc.

SECTION 4.16    Grievance Procedures.

The Authority will provide Inmates with a means to pursue grievances in accordance with MDOC policy and procedure, State and federal law rules and regulations, court orders and, other applicable laws. MDOC will provide appropriate forms for this purpose.

SECTION 4.17    Visitation.

The Authority shall provide physical space, furniture, equipment, and supervision for visitation in accordance with applicable ACA Standards and MDOC policy and procedures.

7

MTC 001406

SECTION 4.18    Access to Courts.

The Authority agrees to insure that Inmates have adequate access to the courts, consistent with applicable laws, court orders, MDOC policy and procedures, rules and regulations of the State of Mississippi and constitutional standards.

SECTION 4.19    Discipline.

The Authority shall impose discipline utilizing MDOC policy and procedures, rules and regulations in accordance with constitutional standards. However, nothing therein will be construed as preventing the Authority from enacting rules and regulations, which shall be binding on the Inmates. Said rules and regulations shall be approved by MDOC.

SECTION 4.20    Use of Force.

Employees of the Facility Operator are authorized to use force only in accordance with applicable laws, MDOC policies and procedures, and rules and regulations of the State. Following any Use of Force, an incident report shall be prepared and MDOC shall be notified pursuant to Section 4.23(c) by way of report.

SECTION 4.21    Good Time/Gain Time.

The Authority shall provide specific information to MDOC in a timely manner in accordance with applicable laws, MDOC policies and procedures and rules and regulations of the State for the purpose of award or forfeiture of good time/gain time. The final decision on awarding or forfeiture of good time/gain time rests with MDOC, although the Authority shall be responsible for providing information as to performance and behavior of Inmates.

SECTION 4.22    Sentence Computation.

The Authority shall provide MDOC with essential data and information relating to sentence computation in accordance with the MDOC policies and procedures, rules or regulations. The final decision with respect to sentence computation rests with the State. MDOC may furnish adjusted release dates to the Authority on a monthly basis, but in no event less than five (5) business days prior to the adjusted release date.

SECTION 4.23    Records and Reports.

a)      The Authority shall maintain Inmate institutional records in accordance with MDOC's record keeping practices and shall adhere to applicable court orders, federal, State and local laws governing confidentiality. Upon request, all records, reports and documents will be made available immediately to the Contract Monitor, MDOC, PEER, and the Attorney General for the State and their respective approved employees and/or agents for review. The Authority shall be reimbursed at the rate of .10 cents per page for providing copies of all records, reports and documents, requested by and made available to MDOC and the Attorney General for the State, excluding the type of document identified in

MTC 001407

subsection "(c)" of this same section. Upon an Inmate's termination of confinement at the Facility, the Authority will forward a complete copy of the Inmate's records to MDOC at no cost.

In the event that litigation is commenced by an Inmate (or his heirs or representatives) against the Authority, the Facility Operator or their respective employees, following termination of his confinement at the Facility, MDOC shall, upon request, immediately furnish to the Authority or the Facility Operator, as applicable, a complete copy of the Inmate's institutional records, including health records and such other records as the MDOC may have, pertaining to the Inmate.

b)   MDOC shall furnish to the Authority each Inmate's institutional record (field jacket), and such other records as the Authority may request and/or MDOC has pertaining to the Inmate. All Inmate records are to remain confidential and are not to be released without approval of MDOC, unless otherwise required by applicable laws, rules or regulations.

c)   The Authority will send to MDOC all incident reports within one (1) week of the incident. However, for reports involving escapes, use of deadly force, use of force in which an Inmate or staff is injured because of an escape, use of deadly force or use of force which requires medical treatment (treatment in excess of first aid), major disturbances or death of an Inmate, the Authority will send such incident reports to MDOC immediately or as soon as reasonably possible after the incident.

d)   The Authority shall provide MDOC access to its Inmate Information System.

SECTION 4.24   Return of Inmates to MDOC.

a)   Upon demand by MDOC, the Authority will deliver to the custody of MDOC any Mississippi Inmate in accordance with applicable laws of the State of Mississippi.

b)   Any Inmate who is released by court order, or is placed on probation or parole shall immediately be returned to MDOC, on behalf of the State.

SECTION 4.25   Inmate Work.

a)   The Authority will develop policies and procedures, which outline and describe those Inmates who qualify to work and/or participate in programs of occupational training at the Facility in accordance with relevant policies of MDOC.

b)   Inmates shall be required to work or participate in educational or vocational programs consistent with MDOC's policies and procedures. The Authority may not require an Inmate to participate in any training, industrial or other work when said assignment is contrary to the laws of the State.

c)   The Authority will abide by all federal and State laws and all rules and/or regulations of MDOC regarding the sale of Inmate goods.

9

MTC 001408

d)    On-the-job certification for training programs will be included in the Inmate work program.

SECTION 4.26   Classification.

a)    The Authority will maintain an inmate classification system, as required by MDOC policy and procedure, and report to the MDOC on the Inmate's condition, progress, conduct, adjustment, recommended retention at the Facility or return to the MDOC. The Authority may administratively transfer any Inmate to a higher security level for a period not to exceed seventy-two (72) hours and any such action taken by the Authority shall be reported immediately to the MDOC.

b)    MDOC shall have sole authority for the classification of Inmates and assignment of Inmates to, and removal of Inmates from, the Facility.

SECTION 4.27   Hearings.

The Authority will provide adequate facilities for meetings and hearings by appropriate State authorities, including MDOC, the Parole Board and representatives of the Mississippi Attorney General's Office, and office space for a legal representative of MDOC.

SECTION 4.28   Death of an Inmate.

a)    In accordance with applicable laws, rules and regulations of the State, the Authority will report immediately to the State the death of any Inmate, furnish all information requested by the State, and follow the instructions of the State with regard to disposition of the body. The Authority will notify the relatives of the deceased Inmate, in compliance with MDOC policy and procedure(s).

b)    The Authority shall not be responsible for any costs/expenses associated with the autopsy, burial, disposition or transportation related thereto of the Inmate's body.

c)    The provisions of this section will not affect the liability of any relative or other legally liable person for the disposition of the deceased or for any expenses therewith.

d)    The Authority will forward to MDOC a certified copy of the death certificate and the Inmate's file, subject to Section 4.23 (a).

SECTION 4.29   Public Information.

a)    The Authority will promptly refer all requests for public information to the MDOC Director of Communication or to his/her designee.

b)    The Authority will not release information regarding Inmates except to the extent required by applicable federal, State or local rules, regulations, laws or court orders.

MTC 001409

b)    Nothing in this section prevents legitimate use of any information regarding the Inmates by prison or law enforcement personnel in the event of an escape.

SECTION 4.30   Legal Proceedings.

a)    The State will defend at its expense any post-conviction actions, including appeals and writs of habeas corpus, by an Inmate challenging the underlying judgment of conviction or the calculation of the sentence imposed. MDOC will be responsible for the defense of such action and shall defend and if permitted by law hold the Authority harmless.

b)    The Authority will defend, at its expense, any actions filed against it, or any of its employees, by, or related to, the Authority's care and security of the Inmates. The State will defend, at its expense, any actions filed against it and/or the Authority challenging the State's authority to transfer inmates to the Facility or the housing of them at the Facility.

c)    The State will defend, at its expense, any actions filed against it, or any of its employees, officers, agents, or servants challenging the constitutionality or enforcement of the policies, procedures, rules and/or regulations of the MDOC to which the MDOC requires the Authority and/or Facility Operator to adhere/comply; the MDOC will be responsible for any and all costs associated with the defense of any such action.

d)    Neither the MDOC nor counsel representing the MDOC will enter into any activity or settlement contract with respect to any claim, which may adversely affect the Authority, or any claim, without first obtaining approval of the Authority.

e)    Similarly, neither the Authority nor counsel representing the Authority will enter into any activity or settlement contract with respect to any claim, which may adversely affect the MDOC, or any claim, without first obtaining approval of the MDOC.

f)    The State shall defend, at its expense any actions arising out of the provision of medical or mental health services or other services which are MDOC's responsibility under Section 4.7 and 4.8 above.

SECTION 4.31   Inspections.

The Contract Monitor, employees/agents designated by MDOC, the Governor of the State, members of the Mississippi Legislature and all members of the Executive and Judicial departments of the State, may inspect the Facility, at all reasonable times, to determine if it maintains standards of care and discipline consistent with those of MDOC, that all Inmates therein are treated equitably, regardless of race, religion, color, creed or national origin and that all other terms of this Agreement are being followed. The State may, at all reasonable times, investigate in person, or by record review, all incidents or reported conditions of confinement involving the Inmates. The Authority agrees to cooperate fully with all such investigations.

SECTION 4.32   Telephone.

MTC 001410

The Authority will provide telephone service for Inmates that is consistent with MDOC's policies and procedures. Inmate phones shall be provided on a basis comparable to the MDOC's current Inmate phone service contracts. The proceeds from the telephone service shall be deposited into the MDOC Inmate Welfare Fund.

## SECTION 4.33   Escapes.

In case of escape from the Facility, the Authority will report the escape to MDOC immediately and MDOC will use all reasonable means to recapture the Inmate at the Authority's expense. If an Inmate escapes from the Facility and is thereafter found outside of Mississippi, it will be the responsibility of MDOC to extradite the Inmate; the costs associated with said extradition shall be the responsibility of the Authority. The Authority shall reimburse MDOC for all directly attributable costs incurred by MDOC in attempting to recapture an inmate escaped from the Facility. Said reimbursement shall be for all out of pocket costs for MDOC that would otherwise not be incurred.  Said payments shall include, but not be limited to, payments of overtime to employees, feeding, lodging and transportation. In the Emergency Procedures used by the Authority, the Mississippi Highway Patrol and the local county law enforcement agency will be notified immediately or as soon as possible according to the list of notifications.

## SECTION 4.34   Occupation and Maintenance of the Facility.

The Authority shall maintain, preserve and keep the Facility in good repair, working order and condition and shall, from time to time, make all repairs, replacements and improvements necessary to keep the Facility in constitutionally adequate condition (subject to the following sentence). The Authority shall cause to be implemented a preventive maintenance, repair and replacement program on plumbing, electrical, mechanical, wiring, and heating/cooling and will be responsible for the cost of such program up to ▮▮▮▮▮▮ per incident.  MDOC shall be responsible for and bear the cost of all other maintenance, repairs, replacements and renovations of the Facility, its physical plant, parts, equipment and/or systems. The Authority shall have the right, subject to prior approval of the MDOC, to remodel the Facility or to make additions, modifications and improvements thereto; provided, that all such additions, modifications and improvements shall thereafter comprise part of the Facility, shall be the property of the Authority and shall be subject to the Lease Purchase Agreement. Such additions, modifications and improvements shall not in any way damage the Facility, adversely reflect on or effect the services or conditions therein or cause it to be used for purposes or in any manner other than those authorized under the provisions of the Act, State and federal Law. The Facility, upon completion of any additions, modifications and improvements made pursuant to this Section, shall be of a value not less than the value of the Facility immediately prior to the making of such additions, modifications and improvements. The Authority will not permit any mechanic's or other lien to be established or remain against the Facility for labor or materials furnished in connection with any remodeling, additions, modifications, improvements, repairs, renewals or replacements made by the Authority pursuant to this Section; provided that if any such lien is established, the Authority shall first notify the State of the Authority's intention to do so, the Authority may in good faith contest any lien filed or established against the Facility and, in such event may permit the items so contested to remain undischarged and unsatisfied during the period of such contest and any appeal therefrom unless the MDOC shall notify the Authority

MTC 001411

that, in the opinion of MDOC legal counsel, by nonpayment of any such item the interest of the MDOC in the Facility will be materially endangered or the Facility or any part thereof will be subject to loss or forfeiture, in which event the Authority shall promptly pay and cause to be satisfied and discharged all such unpaid items or provide the MDOC with full security against any such loss or forfeiture, in form satisfactory to the Authority. The Authority will cooperate fully with the State, to the extent authorized by law, in any such contest, upon the request and at the expense of the Authority.

The Authority's obligations hereunder shall expressly exclude any work or obligations of any nature associated or connected with the identification, abatement, cleanup, control, removal, or disposal of any hazardous materials that are or may be included in the structures and equipment at the Facility or in the environment at and adjacent to the Facility, unless proven the hazardous materials were brought to the Facility by the Authority. MDOC will be responsible for doing whatever is necessary to correct the condition or render such materials or substances harmless in accordance with all applicable laws. This paragraph will survive the termination or expiration of this Agreement.

SECTION 4.35   Educational and Vocational Programming.

The Authority shall provide access to services including, but not limited to, alcohol and drug education program, Chaplaincy, pre-release, literacy, and other programs and services necessary to comply with applicable ACA Standards. The Authority shall provide adequate space for a minimum of five (5) programs, including vocational/educational programs. All classrooms shall meet the relevant criteria established by the Mississippi Department of Education. The curriculum shall meet the Mississippi Department of Education's requirement for adult basic education.

SECTION 4.36   Contract Monitor.

A Contract Monitor shall be retained at all times while this Agreement is in effect. The Contract Monitor shall be hired by the Department and reimbursed by the Authority (at a total cost, including salary, benefits and all expenses, of $55,000 annually) and furnished appropriate office space at the Facility.

The formal monitoring process shall include but not be limited to the following activities:

1.      ongoing assessment of the Facility operations;

2.      daily review of unusual incident reports (attempted escapes, major disturbances, assaults, etc.) and Inmate movement reports;

3.      periodic Inmate interviews and surveys;

4.      quarterly audits of Inmate records and files;

5.      quarterly review of Facility financial reports and program progress reports;

MTC 001412

6.      annual review of independent, qualified inspection reports which determine degree of conformance with fire, health, safety, and sanitation codes; and

7.      annual comprehensive review.

In conducting these activities, the Contract Monitor should assess and document areas of both contract conformance and non-conformance. In instances of the latter, the Monitor shall notify the Authority of any material violations, citing the requirement violated, and specify the corrective action that should be taken and the sanctions that may result if the situation is not rectified. A follow-up inspection should assess and document the Authority's efforts to rectify the situation.

Section 4.37    Purchases.

The Authority agrees to comply with Mississippi Code Annotated Section 47-5-572. The Authority shall not procure goods, to be used by inmates housed in Mississippi facilities, that have been manufactured using inmates in a correctional system of another state if Mississippi Prison Industries is presently manufacturing the same goods using Mississippi inmates, unless the cost of the goods and services can be procured at a price that is at least thirty percent (30%) less than the cost of the same goods and services provided by Mississippi Prison Industries Corporation.

## ARTICLE 5

## EMPLOYEES

SECTION 5.1    Independent Contractor.

The Authority, all related or participatory entities that are in any fashion or means, involved with providing any service or effort in complying with this Agreement and/or the operations of the Facility or its functions including, but not limited to the Facility Operator, and their employees and agents are associated with the State and MDOC only for the purpose(s) and to the extent set forth in this Agreement. With respect to the performance of the services set out herein, the Authority and all those others referred to herein are and shall be independent contractors and, subject to the terms of this Agreement and the sole discretion of the Authority, shall have the right to manage, control, operate and direct the performance of the details of all duties under this Agreement. The agents and employees of the Authority and those others referred to herein shall not accrue leave, retirement, insurance, bonding, use of the State vehicles or any other benefit afforded to employees of the State as a result of this Agreement.

SECTION 5.2    Personnel.

a)      The Authority shall provide professional personnel to deliver twenty-four (24) hour care and supervision to Inmates as such care is defined in this Agreement, as well as administrative and support service personnel for the overall operation of the Facility, in accordance with ACA Standards. Prior to employment with the Authority, applicants shall be subjected to a thorough background check and shall comply with MDOC

14

MTC 001413

policies and procedures relating thereto. During employment, selected employees will be drug tested on a random basis pursuant to the Authority policy. At no time shall the Authority employ a person who is simultaneously employed by the MDOC or who is a former MDOC employee, without advance approval from MDOC, which approval shall not be unreasonably withheld.

b)      Effective 120 days following the Services, Commencement Date, the Authority shall provide staffing in accordance with Exhibit "B" – Staffing Plan. Mandatory and Non-Mandatory positions will be subject to the following:

    i.      Mandatory Positions:
In the event a mandatory staff position vacancy occurs that exceeds four hours, the Authority shall remit to MDOC the mandatory staffing credit for each hour vacant. The mandatory staffing credit shall be calculated by multiplying the actual hourly wage rate of the identified position by 125 percent.

    i.i.    Non-Mandatory Positions:
In the event a non-mandatory staff position is vacant for sixty (60) days in a twelve (12) month contract year period, the Authority shall remit to MDOC the non-mandatory staffing credit of the identified position for each day vacant over sixty (60) days, unless excused in writing by MDOC. The non-mandatory staffing credit shall be calculated by multiplying the actual hourly wage rate of the identified position by 125 percent.

    i.i.i.  Positions will not be considered vacant if covered by overtime, part-time or on-call personnel.

SECTION 5.3    Training.

The Authority shall provide an orientation and training program for all employees. Said orientation and training program shall be in compliance with the training requirements of ACA Standards. Training may be provided through the Authority academy using Authority curriculum.

SECTION 5.4    Testing for Contagious Diseases.

The Authority shall meet all requirements of the State's rules, regulations, policies and procedures and mandates of the State Board of Health and policies and procedures of the State's Bureau of Preventive Health.

SECTION 5.5    Background Check.

MDOC shall cooperate with the Authority in conducting criminal checks on potential employees of the Authority and its subcontractors.

SECTION 5.6    Compliance with Mississippi Employment Protection Act.

15

The Authority represents and warrants that it will ensure its compliance with the Mississippi Employment Protection ACT (Senate Bill 2988 from the 2008 Regular Legislative Session) and will register and participate in the status verification system for all newly hired employees. The term "employee" as used herein means any person that is hired to perform work within the State of Mississippi. As used herein, "status verification system" means the Illegal Immigration Reform and Immigration Responsibility Act of 1996 that is operated by the United States Department of Homeland Security, also known as the E-Verify Program, or any other successor electronic verification system replacing the E-Verify Program. The Authority agrees to maintain records of such compliance and, upon request of the State, to provide a copy of each such verification to the State. The Authority further represents and warrants that any person assigned to perform services hereunder meets the employment eligibility requirements of all immigration laws of the State of Mississippi. The Authority understands and agrees that any breach of these warranties may subject the Authority to the following: (a) termination of the Agreement and ineligibility for any state or public contract in Mississippi for up to three (3) years, with notice of such cancellation/termination being made public, or (b) the loss of any license, permit, certification or other document granted to the Authority by any agency, department, or governmental entity for the right to do business in Mississippi for up to one (1) year, or (c) both. In the event of such termination/cancellation, the Authority would also be liable for any additional costs incurred by the State of Mississippi due to contract cancellation or loss of license or permit.

## ARTICLE 6

### COMPENSATION AND ADJUSTMENTS

SECTION 6.1    Authority Management Per Diem Payment.

MDOC shall pay, in accordance with this Agreement, from any immediately available funds to a depository as designated by the Authority the following:

a)    The sum of ▓▓▓▓ per Inmate Day for each minimum security inmate; ▓▓▓▓ for each medium security inmate, and ▓▓▓▓ for each single-cell security inmate. For purposes of this Agreement, the term "Inmate Day" shall mean each calendar day or part thereof that an Inmate is assigned to the Facility as established by the Midnight Strength Report. MDOC guarantees payment of 100 percent of the population based on the inmate populations listed in Exhibit "A". MDOC will compensate the Authority the greater of the actual average monthly population by custody level, or the populations provided for in Exhibit A by custody level.

b)    All reimbursable costs as set forth in §4.12, §4.23, §4.34, and §6.6, and other applicable provisions of this Agreement, including all time spent by MTC providing security and control of Inmates during outpatient and/or hospitalization visits (not including time spent transporting Inmates to and from medical locations).

MTC 001415

SECTION 6.2    Billings.

The Authority shall submit to MDOC a monthly statement for the number of Inmates assigned to the Facility or for the minimum guarantee, whichever is greater, (as indicated and subject to the provisions set forth in Section 6.1 (a)), and for other expenses incurred which are the responsibility of MDOC. Reimbursable expenses shall be billed one (1) month in arrears and will be due 45 days after receipt by MDOC. MDOC will use its best efforts to make all payments within 30 days after receipt of invoice. Payments not in dispute and not received by said date shall be subject to interest as provided by state law.

The Authority agrees to accept all payments in United States currency via the State of Mississippi's electronic payment and remittance vehicle. MDOC agrees to make payment in accordance with Mississippi law on "Timely Payments for Purchases by Public Bodies," Section 31-7-301, et seq. Mississippi Code Annotated, as amended, which generally provides for payment of undisputed amounts by MDOC within forty-five (45) days of receipt of the approved invoice.

SECTION 6.3    Billing Disputes.

If the amount to be paid to the Authority is disputed by MDOC, then MDOC shall immediately advise the Authority of the dispute and, in the manner provided above, pay the amount of such invoice, which is not in dispute. If the parties cannot resolve the dispute within thirty (30) days of such date that the Authority is advised of MDOC's dispute, either party may initiate dispute proceedings as provided herein.

SECTION 6.4    Compensation Adjustments.

a)    The Authority will be paid a management per diem as set forth in Section 6.1. Nothing in this Agreement shall be construed to prevent the Authority from seeking an increase in the per diem from the Mississippi Legislature in order to offset any cost of living increases.

b)    Pursuant to the Act, the costs of the operation provided hereunder must offer a cost savings of at least ten percent (10%) to MDOC calculated in accordance with the Act. The Joint Legislative Committee on Performance Evaluation and Expenditure Review is required to contract annually with a certified public accounting firm to establish a State inmate cost per day for a comparable State facility, which State inmate cost per day is to be certified annually and shall be used as the basis for measuring the validity of the ten percent (10%) savings. MDOC shall promptly advise the Authority as to the State Inmate cost per day certified for each year as provided in the Act. Fees payable by MDOC hereunder for any year shall not exceed the maximum rate (the "Maximum Rate") which will result in a cost savings for such year of at least ten percent (10%) to MDOC calculated in accordance with the Act, and in the event that fees as provided hereunder would exceed the Maximum Rate for any period, fees for such period shall be payable hereunder at the Maximum Rate rather than at the rate or rates computed in accordance with the otherwise applicable provisions hereof.

17

MTC 001416

    i.    Per diem rates provided for in Section 6.1 a) shall be increased based on per diem rate adjustments as published in the Cost per Inmate Day PEER report. Price changes will be reflective of the percent change from the prior report on the applicable classifications of inmates in custody under each contract. Price increases will be effective immediately following the publishing of the PEER report which shall occur no less than bi-annually.

c)    Change in Scope of Services. MDOC recognizes that the Authority has entered into this Agreement to provide management services based upon current state and federal laws and ACA Standards in effect as of the date of this Agreement. If there are any changes in ACA Standards, federal or state laws, government regulations, court orders or State policies which changes necessitate a change in the scope of services furnished hereunder so as to increase the cost of operating and managing the Facility or performing other services contemplated in this Agreement, the Authority shall be provided extra compensation for the additional services required. The Change in Scope shall specifically include, but not limited by, any Additional Services the Authority shall be required to perform outside the Authority's (Private Operator's) original proposal submitted May 31, 2012, incorporated herein by reference, due to previously enacted federal or state laws, government regulations, court orders, or State policies. The Authority shall provide reasonable notice in writing together with documentation or other information supporting the additional compensation to offset the increase in costs for furnishing the Additional Services. The State shall review this information and may provide the additional compensation, upon mutual agreement of the parties, retroactive to the date the initial costs were incurred.

d)    In the event the Authority receives a request from Lauderdale County or other local governing authorities for a "fees-in lieu" of taxes or impact fees to be paid by the Facility Operator, the Authority shall notify the MDOC, which shall use its best efforts to obtain additional funding/compensation from the State to comply with such request(s).

SECTION 6.5    <u>Failure to Agree on Compensation for Additional Services.</u>

If the parties cannot agree on compensation for Additional Services within sixty (60) days of the date the Authority requests such compensation, MDOC or the Authority may initiate resolution through dispute procedures provided herein.

SECTION 6.6    <u>Expense Limitations</u>

In the event the actual cost for the following expense items exceeds the amount listed, MDOC agrees to reimburse the Authority for the difference between the amount identified below and the actual cost.

    Furniture, fixtures, equipment (including vehicles), and building repairs, incurred within the first 120 days of the Service Commencement Date.    $1,000,000

MTC 001417

SECTION 6.7    Utilities; Taxes.

The Authority shall pay when due all utility charges, including without limitation all gas, water, steam, electricity, heat, power, telephone and other charges incurred or imposed with respect to the Facility, from operating revenue and per diems.

The Authority shall not be responsible for payment of property or excise taxes and other governmental charges which may be assessed or levied against the Facility.

SECTION 6.8    Annual Audits.

The Authority accepts the requirement of an annual audit by the State Department of Audit and a contract audit conducted by the CPA firm selected by the Joint Legislative Committee on Performance Evaluation and Expenditure Review.

## ARTICLE 7

## INDEMNIFICATION AND INSURANCE

SECTION 7.1    Indemnification.

a)    The parties understand that the current law may not allow the Authority to indemnify the State and/or MDOC under this Agreement; however, to the extent the law changes in the future, the Authority, by and through its contract with the Facility Operator, shall defend, indemnify, and hold harmless the State, MDOC, its officers, agents, servants, and employees ("MDOC Indemnities") from any claim, demand, suit, liability, judgment, and expense (including attorney's fees and other costs of litigation) (collectively, a "Claim") arising out of or relating to injury, disease, or death of persons or damage to or loss of property resulting from or in connection with the performance of this Agreement by the Authority, the Facility Operator, its agents, employees, and subcontractors or any one for whom the Authority may be responsible. Notwithstanding the foregoing, the Authority shall have no obligation to insure, defend, indemnify, or hold harmless the MDOC Indemnities from any Claim arising out of or relating to any State or MDOC policy, order, internal management procedures, financial procedures, court orders, administrative rules, and governmental requirements of law, which govern the Authority relative to the custody and supervision of Inmates (collectively, "Imposed Requirements"). Additionally, the obligations, indemnities, and liabilities assumed by the Authority under this paragraph shall not extend to any liability caused by the negligence of the MDOC Indemnities. MDOC shall reasonably notify the Authority of any claim for which it may be liable under this paragraph.

b)    The parties understand that the current law does not allow the State and/or MDOC to indemnify the Authority under this Agreement; however, to the extent the law changes in the future, the State and/or MDOC shall defend, indemnify, and hold harmless the Authority from any Claim arising out of or relating to injury, disease, or death of persons or damage to or loss of property resulting from or in connection with an Imposed Requirement or the performance of this Agreement by MDOC, its agents, employees and

19

MTC 001418

subcontractors or any one for whom MDOC may be responsible. The obligations, indemnities, and liabilities assumed by MDOC under this paragraph shall not extend to any liability caused by the negligence of the Authority or its employees. The Authority shall reasonably notify MDOC of any claim for which it may be liable under this paragraph.

c)   Neither party shall waive, release, or otherwise forfeit any possible defense the other party may have without the consent of such party relative to claims arising from or made in connection with the operation of the Facility by the Authority. MDOC and the Authority shall preserve all such available defenses and cooperate with each other to make such defenses available for each other's benefit to the maximum extent allowed by law.

This Section will survive the expiration or termination of this Agreement.

SECTION 7.2   Insurance.

The Authority shall maintain, or cause to be maintained, an adequate plan of insurance which shall include fire and casualty insurance for the full value of the building and at least ██████████ dollars ██████████ of liability insurance as specifically required in the Act. Said insurance shall adequately:

a)   protect the State of Mississippi from actions by a third party against the Authority and/or its employees, agents, independent contractors, subcontractors and/or its board members, or the State, as a result of this Agreement; and

b)   protect the State of Mississippi against claims arising as a result of an occurrence during the term of this Agreement.

SECTION 7.3   Certificate of Insurance.

During the performance of this Agreement, the Authority shall maintain the plan of insurance and submit a Certificate of Insurance to MDOC , for the mutual protection and benefit of the Authority and MDOC, naming the State as an additional insured and entitled to all notices issued under such policy, to cover those claims set forth in Section 7.1, whether the same be by the Authority, a subcontractor or by anyone directly or indirectly employed by any of them or by anyone for whose acts any of them may be liable.

SECTION 7.4   Workers' Compensation and Unemployment Insurance Compensation.

The Authority shall maintain such workers' compensation insurance and unemployment compensation as required by the laws of the State of Mississippi, and provide to MDOC a copy of the Certificate of Insurance.

MTC 001419

SECTION 7.5    Defense/Immunity.

By entering into this Agreement, MDOC does not waive any defense nor does the Authority waive any immunity, which may be extended to it by operation of law, including any limitation on the amount of damages.

SECTION 7.6    Notice of Claims.

Within five (5) working days after receipt of Summons or notice of claim by MDOC or any agent, employee or officer, pursuant to which MDOC intends to exercise its indemnification right under Section 7.1, MDOC shall notify the Authority in writing of the commencement thereof. The notice requirement is intended to ensure that the Authority's defense of the claim is not harmed by failure to comply with any notice requirements. Failure to comply with said notice requirements can result in the Authority's refusal to indemnify, MDOC or any agent, employee or officer if such failure to notify results in a prejudice to the Authority, MDOC or any agent, employee, officer or independent contractor. The Authority will provide MDOC similar notice of claims.

## ARTICLE 8

## DEFAULT AND TERMINATION

SECTION 8.1    Default by MDOC.

Each of the following shall constitute an Event of Default on the part of MDOC:

a)    Non-Payment
Failure by MDOC to make payments, except where such failure is the direct result of non-appropriation of funds as described in Section 8.6 of this Agreement, to the Authority under this Agreement within forty-five (45) days after such payment is due, except for such payments as may be the subject of a valid dispute between the parties and said dispute is being actively negotiated or attempted to be resolved.

b)    Other Material Breach
Except for the obligation to make payments to the Authority, the persistent or repeated failure or refusal by MDOC to substantially fulfill any of its obligations under this Agreement, unless justified by Force Majeure, or excused by contract or by the default of the Authority.

SECTION 8.2    Default by the Authority.

Persistent failure or refusal by the Authority to substantially fulfill its obligations under this Agreement is an Event of Default on the part of the Authority, unless justified by Force Majeure, or excused by contract or by the default of MDOC.

MTC 001420

SECTION 8.3    Notice of Breach.

No breach of this Agreement on the part of either party shall constitute an Event of Default and no action with regard to same may be instituted unless and until the party asserting a breach specifies that a default or defaults exist(s) which, unless corrected or timely cured, will constitute a material breach of this Agreement on the part of the party against whom a breach is asserted.

SECTION 8.4    Time to Cure.

If any material breach of this Agreement by either party remains uncured more than thirty (30) days after written notice thereof by the party asserting the breach to the party against whom the breach is asserted, such condition shall be an Event of Default; provided, however, that if within thirty (30) days after such notice, a substantial good faith effort to cure said breach has been undertaken by the party against whom the breach has been asserted, said breach shall not be an Event of Default if it is cured within a reasonable time thereafter.

In the event a material breach of the Agreement results in the creation of an immediate emergency life-threatening situation for the safety of the Inmates or the local community and the Authority has not moved to correct the breach in a manner appropriate to the emergency, MDOC, pursuant to its policies, may act to cure the immediate emergency threat and proceed with termination according to this section.

If the breach cannot be cured within thirty (30) days after notice and such breach can be cured through an on-going effort on the part of the breaching party, the breaching party may, within the thirty (30) day period following the notice of the breach, submit a plan for curing the breach within a reasonable period of time, not to exceed six (6) months, unless extended by the non-breaching party. If the plan is approved by the non-breaching party, the non-breaching party will not pursue remedies hereunder as long as the breaching party timely undertakes to cure the breach in accordance with the approved plan; such approval shall not be unreasonably withheld.

SECTION 8.5    Remedy.

Upon the occurrence of an Event of Default, either party shall have the right to pursue any remedy it may have a law or in equity, including but not limited to: (a) reducing its claim to judgment, (b) specific performance, (c) taking action to cure the Event of Default, and (d) termination of the Agreement. In the event that MDOC elects to terminate this Agreement as a result of the Authority's failure to perform its obligations pursuant to the terms of this Agreement, MDOC may assume operations of the Facility.

SECTION 8.6    Termination due to Unavailability of Funds.

The payment of money by MDOC under any provisions hereto is contingent upon the availability of funds appropriated by the Legislature of the State to pay the sums pursuant to this Agreement. In the event funds for this Agreement become unavailable due to non-appropriation, the State shall have the right to terminate this Contract without penalty or obligation, except for the obligation to pay for services already provided.

MTC 001421

SECTION 8.7    Waiver.

No waiver of any breach of any of the terms or conditions of this Agreement shall be held to be a waiver of any other or subsequent breach; nor shall any waiver be valid or binding unless the same shall be in writing and signed by the party alleged to have granted the waiver.

SECTION 8.8    Termination for Convenience.

Either party may terminate this Agreement for convenience with ninety (90) days prior written notice.

## ARTICLE 9

## MISCELLANEOUS

SECTION 9.1    Disputes.

In the event that the parties are unable to resolve any issue related to this Agreement, the parties shall use their best efforts to settle such disagreement. To this effect, the parties shall consult and negotiate with each other in good faith and, recognizing their mutual interest, attempt to reach a just and equitable solution satisfactory to both parties. If the parties agree, they may engage a mediator to assist their good faith negotiations. If the parties do not reach such solution within sixty (60) days from the date a party has notified the other party in writing of the disagreement, then, upon notice by either party to the other party, the disagreement shall be submitted to arbitration administered by the American Arbitration Association (AAA) in accordance with its Commercial Arbitration rules and judgment on the award rendered by the arbitrator or arbitrators may be entered in any court having jurisdiction thereof. The arbitrator or arbitrators shall be appointed in accordance with the AAA Commercial Arbitration Rules, which provide for neutral arbitrators, and a number of arbitrators deemed appropriate by the AAA administrator. The parties hereto expressly agree that in negotiations and arbitrations that may arise hereunder, each party will cooperate and work toward a timely resolution. The prevailing party's reasonable attorney's fees and expenses shall be borne by the unsuccessful party and may be included in the arbitrator's award.

SECTION 9.2    Equal Employment Opportunity and Affirmative Action.

The parties ascribe to principles of equal employment opportunity and affirmative action.

SECTION 9.3    Binding Nature.

This Agreement shall not be binding upon the parties until it is approved and executed by the parties. Thereafter, this Agreement shall be binding on the parties and their heirs, successors and assigns.

MTC 001422

SECTION 9.4    Invalidity and Severability.

In the event that any provision of this Agreement shall be held to be invalid, such provision shall be null and void, and however, the validity of the remaining provisions of this Agreement shall not in any way be affected thereby.

SECTION 9.5    Counterparts.

This Agreement may be executed in multiple counterparts, each of which shall be deemed to be an original and all of which shall constitute one Agreement, notwithstanding that all parties are not signatories to the original or the same counterpart, or that signature pages from different counterparts are combined, and the signature of any party to any counterpart shall be deemed to be a signature also and may be appended to any other counterpart. A facsimile or electronic signature is considered an original hereunder.

SECTION 9.6    Interpretation.

The headings contained in the Agreement are for reference purposes only and shall not affect the meaning or interpretation of this Agreement.

SECTION 9.7    Terminology and Definitions.

All personal pronouns used in this Agreement, whether used in the masculine, feminine, or neuter gender, shall include all other genders; the singular shall include the plural and the plural shall include the singular.

SECTION 9.8    Venue.

This Agreement shall be interpreted by the laws of the State of Mississippi. Venue is proper in a court of competent jurisdiction in Mississippi.

SECTION 9.9    Amendment.

This Agreement shall not be altered, changed or amended except by mutual consent of the parties in writing.

SECTION 9.10    Scope of Agreement.

This Agreement incorporates all the agreements, covenants and understandings between the parties hereto concerning the subject matter hereof, and all such covenants, agreements and understandings have been merged into this written Agreement. No prior agreement or understandings, verbal or otherwise, of the parties or their agents shall be valid or enforceable unless embodied in this Agreement.

MTC 001423

SECTION 9.11    Subcontracting and Assignment.

The Authority may, upon approval by MDOC, assign or subcontract its rights or obligations under this Agreement. The Authority shall remain responsible for seeing that any subcontractor or assignee fulfills the provisions of this Agreement.

SECTION 9.12    Emergency Management Plan.

The Authority will develop policies and procedures regarding a plan for the transfer of the Facility to MDOC in the event that labor disputes or any natural disaster makes it unfeasible for the Authority to perform its duties.

SECTION 9.13    Existing Agreements.

Nothing in this Agreement abrogates or impairs any other agreement for the confinement, rehabilitation, or treatment of Inmates now in effect between MDOC and any other State agency or public body.

SECTION 9.14    Internal Relations.

Nothing in this Agreement affects the internal relations of the parties and their respective departments, agencies, or subdivisions.

SECTION 9.15    Third Party Rights.

The provisions of this Agreement are for the sole benefit of the parties hereto and shall not be construed as conferring any rights on any other person, except MTC.

SECTION 9.16    Notices.

All notices called for or contemplated hereunder shall be in writing and shall be deemed to have been duly given when personally delivered or 48 hours after mailed to each party by certified mail, return receipt requested, postage prepaid, addressed as set forth below:

MDOC:                           Mississippi Department of Corrections
                                723 North President Street
                                Jackson, Mississippi 39202


The Authority:                  East Mississippi Correctional Facility Authority
                                Post Office Box 1310
                                Meridian, Mississippi  39302
                                Attn: Fred M. Rogers, President


With a copy to:                 Hammack, Barry, Thaggard and May, LLP
                                Post Office Box 2009
                                Meridian, Mississippi  39302-2009

MTC 001424

IN WITNESS WHEREOF, the parties hereto have executed this agreement as of the ____ of August, 2012.

MISSISSIPPI DEPARTMENT OF CORRECTIONS:

By: _____

Christopher B. Epps, Commissioner

REVIEWED BY
MDOC LEGAL COUNSEL

SEP 1 2 2012

APPROVED FOR SIGNATURE

EAST MISSISSIPPI CORRECTIONAL FACILITY AUTHORITY

By: _____

Fred M. Rogers, President

STATE OF MISSISSIPPI
COUNTY OF LAUDERDALE

BEFORE ME, the undersigned authority within and for the above jurisdiction, this day personally appeared **Fred M. Rogers**, known to me to be the President of the East Mississippi Correctional Facility Authority, who duly acknowledged that he, being thereto duly authorized, signed, executed and delivered the above instrument.

WITNESS my signature and official seal, this the _____ day of _____, 2012.

_____
NOTARY PUBLIC

My Commission Expires:

_____

STATE OF MISSISSIPPI
COUNTY OF Hinds

BEFORE ME, the undersigned authority within and for the above jurisdiction, this day personally appeared **Christopher B. Epps**, Commissioner of the Mississippi Department of Corrections, who duly acknowledged that he, being thereto duly authorized, signed, executed and delivered the above instrument.

WITNESS my signature and official seal, this the _14_ day of September, 2012.

_____
NOTARY PUBLIC

My Commission Expires:

STATE OF MISS
NOTARY PUBLIC
ID # 100069
TIFFANY C. WHITE
Commission Expires
Aug. 31, 2015
HINDS COUNTY

26

**MTC 001425**

## EXHIBIT A

### Inmate Custody and Guaranteed Population Levels

Minimum Custody – ▉▉▉ Inmates
Medium Custody – ▉▉ Inmates
Single Cell Custody – ▉▉ Inmates

Notwithstanding the numbers listed above, at a minimum, MDOC shall be considered to have met the guaranteed inmate population levels if the actual payments to MTC shall be equal to or greater than $17,893.833 for each contract year.

MTC 001426