SEP 1 2 2012

## MANAGEMENT AND OPERATIONS AGREEMENT

THIS MANAGEMENT AGREEMENT (this "Agreement") effective as of the 19th day of July, 2012, is made and entered into by and between the **EAST MISSISSIPPI CORRECTIONAL FACILITY AUTHORITY**, a public body corporate and politic created under the authority of House Bill 1719, Local and Private Laws of the 1996 Regular Session of the Mississippi Legislature (hereinafter referred to as the "Authority"), with its mailing address is 517 23rd Avenue, Post Office Box 927 (39202-0927), Meridian, Mississippi 39301, and **MANAGEMENT & TRAINING CORPORATION**, a Delaware corporation (hereinafter referred to as "MTC") with its principal office and mailing address located at 500 North Marketplace Drive, Centerville, Utah 84014.

### WITNESETH:

**WHEREAS**, the Authority was created by Lauderdale County, Mississippi (the "County") under the authority of House Bill 1719 as a public body corporate and politic to, among other things, design, finance, own and operate an adult correctional facility in the County; and

**WHEREAS**, pursuant to House Bill 1719, as amended, the Mississippi Department of Corrections (the "Department") may contract with the Authority for the private incarceration of not more than one thousand five hundred (1500) Inmates at the Facility which contract must comply with the provisions of Sections *47-5-1211* through 47-5-1227, Mississippi Code of 1972, as amended (together with House Bill 1719, the "Act"); and

**WHEREAS**, the Authority has entered into a Residential Services Agreement with the Department of Corrections, for placement of the Department's Inmates in the Facility; and

**WHEREAS**, pursuant to the Act the Authority is authorized to contract with a private entity for the management and operation of the Facility; and

**WHEREAS**, the Authority desires that the operation and management of the Facility and the requirements of the Agreement with the Department to be accomplished by a contractor who has the knowledge, expertise and experience necessary to operate and manage the Facility and deliver the services required by the Agreement;

**WHEREAS**, the Department has recommended MTC as the Facility Operator that it prefers and desires for the Authority to utilize to operate the Facility;

**WHEREAS**, the Authority is satisfied that MTC has the superior qualifications, experience and management personnel necessary to carry out the terms of this Agreement and those of the Residential Services Agreement and to comply with applicable laws, court orders and applicable ACA Standards associated therewith;

1

MTC 001547

**WHEREAS,** the Authority desires to engage the services of MTC to operate and manage the Facility for the benefit of the Inmates, the State of Mississippi (the "State") and the Authority, and MTC desires to accept such engagement, all in accordance with the terms and conditions of this Agreement as hereinafter set forth.

**NOW, THEREFORE,** in consideration for the mutual covenants herein contained the parties hereby agree as follows:

## ARTICLE I
## DEFINITIONS

In addition to those terms defined in the preamble, the following terms contained within this Agreement shall have the meanings defined by this Article I:

"ACA" means the American Correctional Association.

"ACA Standards" shall mean the ACA Standards for Adult Correctional Institutions (4th Edition), as the same may be modified, amended or supplemented in the future, applicable court orders and state laws.

"Act" means House Bill 1719, Local and Private Laws of the 1996 Regular Session of the Mississippi Legislature, as amended, and Sections 47-5-1201 et seq. and 47-5-943 et seq., Mississippi Code of 1972, as amended.

"Agreement" means this Management & Operations Agreement.

"Authority" shall mean the East Mississippi Correctional Facility Authority, a public body corporate and politic.

"Contract Monitor" shall mean the person designated by the Department pursuant to Section 47-5-1223 of the Mississippi Codes of 1792.

"Contract" shall mean this Agreement.

"Department/State" The term "Department" or "State" shall mean the State of Mississippi and the Department of Corrections of the State of Mississippi, collectively.

"Facility" shall mean the medium security male correctional building, improvements, expansions and/or grounds being operated in Lauderdale County, Mississippi.

"Facility Operator" shall mean Management & Training Corporation ("MTC"), a Delaware Corporation.

"Force Majeure" means the failure to perform any of the terms and conditions of this Agreement resulting from acts of God, storm, fire, casualty, terrorism, war or national emergency, or action/inaction of the State.

MTC 001548

"Inmate" shall mean and include any adult male person who is committed to the custody of the Department and is assigned to the Facility for incarceration therein pursuant to the Residential Services Agreement and this Agreement.

"Inmate Day" shall mean each twenty-four (24) hour period an Inmate is admitted to the Facility, to include the first day of incarceration, but not the last as determined by the Midnight Strength Report of each day.

"Lease Purchase Agreement" means the Third Amended and Restated Lease Agreement between the Authority and the Department, dated July 20, 2010 and as may be amended at any time and from time to time.

"MTC" shall mean Management & Training Corporation, a Delaware corporation.

"Residential Services Agreement" shall mean that certain Residential Service Agreement between the Authority and the Department with an effective date of as of July 19, 2012.

"Service Commencement Date" shall mean the effective date hereof.

"Inmate Information System" means that software used by MTC at the Facility.

"Services Commencement Date" means the date on which MTC shall begin providing management and operations services at the Facility pursuant to this Agreement, which date shall be the first day that MTC assumes management and operational responsibility for the Facility.

"Unforeseen Circumstances" means those acts or occurrences beyond the reasonable contemplation of the parties at the time of the execution of this Agreement which materially alter the financial conditions upon which this Agreement is based; provided that such acts or occurrences shall not include (i) inflation as contemplated by Section 6.4 of the Residential Services Agreement, or (ii) acts within the control of the party claiming unforeseen circumstances.

"Use of Force" means force as contemplated by the ACA, applicable standards and actions set out in the Act (§47-5-1215), as amended from time to time.

## ARTICLE II
## TERM

**Section 2.1**   Term.   The Authority hereby engages the services of MTC exclusively and MTC hereby accepts engagement as manager and operator of the Facility. The initial term of this Agreement shall be for a period of ten (10) years commencing on the effective date of this Agreement, July 19, 2012 and ending July 18, 2022, or until a successor subsequent agreement is effectuated between the Authority and MTC (or other private operator or entity). This Agreement is subject to annual appropriations as set forth in Section 8.6 of the Residential Services Agreement.

This Agreement may be terminated without penalty or liability as follows:

(a)   By the Authority without advance notice, at any time (i) the Residential Services Agreement is terminated, or (ii) the Department shall advise the Authority that MTC is not an acceptable operator/manager of the Facility.

(b)   As otherwise provided for in Article VII hereof.

3

(c) By the Authority after written notice and a thirty (30) day cure period, in the event (i) the Facility shall fail to comply with all ACA Standards, (ii) the required insurance is canceled or notice of cancellation is issued, or (iii) acting reasonably and in good faith, the Authority, based upon MTC's or a governmental report, finds that the financial condition, management or operations of MTC (at this Facility or others) jeopardizes the ability of MTC to properly and safely operate the Facility and honor its obligations under this Agreement.

(d) By the Authority and/or MTC by giving written notice of such termination to either party not less than ninety (90) days prior to the date of termination.

Notwithstanding the above, failure of the Authority to pay, or cause the State on behalf of the Authority to pay MTC shall not be grounds for termination unless (a) such failure has continued for more than ninety (90) days after the date said payment was due the Authority from the Department, and (b) forty-five (45) days has elapsed since the disputed payment was submitted for resolution under Section 6.3 of the Residential Services Agreement.

## ARTICLE III
## DUTIES AND AUTHORITY OF MTC

**Section 3.1** **General Duties and Authority**. Subject to the Authority's right to monitor operations and terminate this Agreement, MTC shall have the authority, responsibility, and duty to use and occupy the Facility and to fully and completely manage and operate the Facility to provide those services and meet the conditions required to comply with the terms and conditions of the Residential Services Agreement and all relevant Court decisions. All definitions, terms, covenants, agreements, conditions and provisions of the Residential Services Agreement are incorporated herein by reference and MTC covenants and agrees, through execution of this Agreement, that the terms, covenants, agreements, conditions and provisions to which the Authority is obligated under the Residential Services Agreement shall by this reference, apply to provide and govern the rights, duties, obligations and agreements of MTC hereunder. MTC shall be responsible for all duties and obligations of the Authority under the Residential Services Agreement, which is incorporated herein by reference.

**Section 3.2** **Purchasing**. MTC shall have the authority to obtain necessary purchases/services and to apply policies and procedures for the provision of services required by the Residential Services Agreement and applicable laws. MTC shall have authority to contract outside services and to determine supply resources, vendors, and planning within the Facility, using its best efforts to purchase locally. This authority shall be subject to monitor and audit by the Authority, at the Authority's expense.

**Section 3.3** **Administrative Services**. MTC shall have the discretion, which discretion shall be exercised in good faith, to establish and apply such policies and procedures for the general operation of the Facility and shall develop the same into manuals that are subject to review and inspection by the Authority.

**Section 3.4** **Staffing**. MTC shall provide, pursuant to the Residential Services Agreement and in accordance with ACA Standards and Department requirements, adequate staffing and formal written policies and procedures for the operation of the Facility. Pursuant thereto MTC,

4

acting as employer, shall have authority to select, hire, train, supervise and discharge all of MTC's employees, relevant to the services in or conditions of the Facility. MTC shall use its best efforts to hire locally and pay competitive salaries and benefits to attract and retain the highest quality people. Personnel employed by MTC at the Facility, including those who are issued firearms, shall be trained and supervised in accordance with the aforementioned policies and procedures and ACA Standards and must comply with applicable laws, rules and regulations of the State.

**Section 3.5** **Accreditation.** MTC shall comply with all ACA standards and shall work with the Authority and its designees to improve, enhance and establish policies and procedures for the functions and goals of the Facility to attempt to meet evolving professional and humane standards. MTC shall annually update and enhance its policies and procedures. MTC shall use its best efforts to obtain and maintain ACA Accreditation and any reaccreditation, as may be applicable.

**Section 3.6** **Contracts.** MTC shall have the authority to prepare and execute all contracts that are normal, routine, and reasonable for the continuance of general operations of the Facility unless otherwise specified within this Agreement which contracts shall be in the name of MTC.

**Section 3.7** **Regulations and Permits.** MTC shall use its best efforts to maintain in full force and effect any licenses and permits required by State and Federal Laws, Rules and Regulations to operate the Facility. Failure to maintain same in any area materially affecting the services, conditions or goals of the Facility, will be an act that if not cured within 30 days, will permit the Authority to terminate this Agreement.

**Section 3.8** **Maintenance and Modification of the Facility.** MTC shall maintain, preserve and keep the Facility in good repair, working order and condition and shall, from time to time, make all repairs, replacements and improvements necessary to keep the Facility in constitutionally adequate condition (subject to the following sentence). MTC shall implement a preventive maintenance, repair and replacement program on plumbing, electrical, mechanical, wiring, cooling and heating and will be responsible for the cost of such program up to ▮▮▮▮ per incident. The Department, pursuant to the Residential Services Agreement, shall be responsible for and bear the cost of all other maintenance, repairs, replacements and renovations of the Facility, its physical plant, parts, equipment and/or systems. MTC shall have the right, subject to prior approval of the Authority, to remodel the Facility or to make additions, modifications and improvements thereto; provided, that all such additions, modifications and improvements shall thereafter comprise part of the Facility and shall be the property of the Authority and shall be subject to the Lease Purchase Agreement. Such additions, modifications and improvements shall not in any way damage the Facility, adversely reflect on or effect the services or conditions therein nor cause it to be used for purposes or in any manner other than those authorized under the provisions of State and Federal Law; and the Facility, upon completion of any additions, modifications and improvements made pursuant to this Section, shall be of a value not less than the value of the Facility immediately prior to the making of such additions, modifications and improvements. MTC will not permit any mechanic's or other lien to be established or remain against the Facility for labor or materials furnished in connection with any remodeling, additions, modifications, improvements, repairs, renewals or replacements made by MTC pursuant to this

5

Section; provided that if any such lien is established, MTC shall first notify the Authority of MTC's intention to do so. MTC may in good faith contest any lien filed or established against the Facility and, in such event may permit the items so contested to remain undischarged and unsatisfied during the period of such contest and any appeal therefrom unless the Authority shall notify MTC that, in the opinion of legal counsel, by nonpayment of any such item the interest of the Authority in the Facility will be materially endangered or the Facility or any part thereof will be subject to loss or forfeiture, in which event MTC shall promptly pay and cause to be satisfied and discharged all such unpaid items or provide the Authority with full security against any such loss or forfeiture, in form satisfactory to the Authority. The Authority will cooperate fully with MTC, to the extent authorized by law, in any such contest, upon the request and at the expense of MTC.

MTC's obligations hereunder will expressly exclude any work or obligations of any nature associated or connected with the identification, abatement, cleanup, control, removal, or disposal of any hazardous materials that are or may be included in the structures and equipment at the Facility or in the environment at and adjacent to the Facility. If the Authority and/or Department are able to prove that MTC brought hazardous materials to the Facility and the Environmental Protection Agency requires clean up of such materials, MTC will be responsible to clean up such materials. Otherwise the Department, pursuant to the Residential Services Agreement, will be responsible for doing whatever is necessary to correct the condition or render such materials or substances harmless in accordance with all applicable laws. This paragraph will survive the termination or expiration of this Agreement.

**Section 3.9  Payments.** MTC shall pay when due all gas, water, steam, electricity, heat, power, telephone, and other charges incurred in the operation, maintenance, use, occupancy and upkeep of the Facility, subject to the provisions of Section 3.8 above, as well as excise taxes and governmental charges of any kind whatsoever, which may at any time be lawfully assessed or levied against or with respect to MTC's use of the Facility, including all special assessments and charges lawfully made by any governmental body for public improvements that may be secured by a lien on the Facility subsequent to the date of this Agreement and throughout its term, provided that with respect to special assessments or other governmental charges that may lawfully be paid in installments over a period of years, MTC shall be obligated to pay only such installments as and when the same become due. MTC may, at MTC's expense and in the Authority's name, in good faith contest any such taxes, assessments, utility and other charges and, in the event of any such contest, may permit the taxes, assessments or other charges so contested to remain unpaid during the period of such contest and any appeal therefrom unless MTC shall notify the Authority that, in the opinion of the Authority's outside legal counsel, by nonpayment of any such items the interest of the Authority in the Facility will be materially endangered or the Facility or any part thereof will be subject to loss or forfeiture, in which event MTC shall promptly pay such taxes, assessments or charges or provide the Authority with full security against any loss which may result from nonpayment, in form satisfactory to the Authority.

**Section 3.10  Confidentiality.** The Authority recognizes that MTC's policies, procedures, staffing charts, documents and other information provided to it by MTC are confidential and agrees that, unless required by a Contract or applicable law or court decision, it shall not release or disclose the contents of any such policy, procedure, document or other information to third parties without the express written consent of MTC. The Authority acknowledges that MTC's policies,

MTC 001552

manuals and software are proprietary and protected by copyright, trademark and other applicable laws, rules and/or regulations relating to intellectual property rights. Further, the Authority agrees that, unless required by the Residential Services Agreement or applicable law, it shall not reveal any of MTC's trade secrets.

**Section 3.11 Duties and Responsibilities.** MTC shall (a) continuously and fully cooperate with the Authority in the performance of the Authority's duties and responsibilities under this Agreement, (b) always act in good faith, and (c) do all things necessary and/or incidental to effect performance of all the Authority's obligations under the Residential Services Agreement.

**Section 3.12 Annual Payment to the Authority.** During the Term of this Agreement and any extensions or renewals hereof, MTC shall pay the Authority ▮▮▮▮▮ Dollars ▮▮▮▮▮ or such other amount as may be mutually agreed upon, annually as an administrative fee. Such payment shall be made on or before March 1 of each calendar year. The first payment shall be due on or before March 1, 2013. The Authority agrees it will not impose any other taxes, fees, or other charges of any kind under this Agreement.

## ARTICLE IV
## DUTIES OF THE AUTHORITY

**Section 4.1 Duties of the Authority.** The Authority agrees to cooperate with MTC in the performance of MTC's duties and responsibilities under this Agreement, to act in good faith, and to do all reasonable things necessary to aid and effect MTC's performance as an independent contractor under the terms of this Agreement.

## ARTICLE V
## COMPENSATION TO MTC

**Section 5.1 Payment for Services.** For Inmates housed pursuant to the Residential Services Agreement, the Authority agrees and shall direct that the Department shall pay MTC a per diem rate per Inmate per Inmate Day and any reimbursable costs both as allowed and as calculated in the Residential Services Agreement.

MTC will bill the Department directly for such fees by the tenth (10th) day following the end of the calendar month in which the service was rendered, and MTC is authorized to accept payment directly from the Department without said payments being first tendered to the Authority. The Authority will use its best efforts to cause the Department to pay MTC, no later than forty-five (45) days following receipt of the invoice by the Department. The Authority shall have the right at any time upon reasonable request to review any billing or payment information and documents regarding payment of all fees.

The price charged by MTC for Inmates housed pursuant to the Residential Services Agreement will be adjusted by the same amount and at the times as adjustments are effective pursuant to the Residential Services Agreement.

The Authority shall not be required to make any payment to MTC unless and until the Authority has been paid any payment due by the State.

7

MTC.    The Authority shall not be subject to any penalties or interest for any delays in payment to

**Section 5.2    Unanticipated Compensation Adjustments.**

(a)    MTC has entered into this Agreement based on the terms, conditions, covenants and requirements of the Residential Services Agreement, the relevant laws, ordinances, regulations, court decisions and ACA Standards in effect as of the date of this Agreement. If one or more of these requirements or standards change during the term of this Agreement that has the effect of increasing or decreasing the cost of managing and operating the Facility or of delivering the services contemplated in this Agreement and the Residential Services Agreement, then the per diem rate as set forth in Section 5.1 hereof may be increased or decreased by the Department by a sufficient agreed upon amount to offset the increases or decreases.

(b)    Unforeseen Circumstances may arise during the term of this Agreement that may increase or decrease MTC's cost of managing and operating the Facility. In the event that such circumstances arise, MTC shall, in order to obtain an adjustment, request from the Department (pursuant to the Residential Services Agreement), within sixty (60) days of the occurrence of the Unforeseen Circumstance, a change order to increase or decrease MTC's compensation relative to the change in costs from the unforeseen circumstance.

(c)    The party desiring a change in compensation shall provide reasonable notice, in writing, and documentation supporting the requested compensation adjustment to the other party.

(d)    Any increase or decrease in compensation due to MTC hereunder shall be limited to the amount of the disbursements pursuant to the Residential Services Agreement.

## ARTICLE VI
## INDEMNIFICATION AND INSURANCE

**Section 6.1    Indemnification of the Authority by MTC.**

(a)    MTC shall defend in any action, administrative or judicial (at law or equity), and does hereby completely indemnify and hold harmless Lauderdale County, Mississippi, the City of Meridian, Mississippi, the Authority, MDOC, and/or their attorneys, directors, Commissioners, Supervisors, officials, agents and employees, officially and/or individually, (the "Indemnified Parties") of, from and against:

    1.    Any and all demands or claims relating to or arising or resulting from:

        i.    any breach or default in MTC's performance of this Agreement;

        ii.    any claim, injury, deprivation or loss in any way relating to MTC's services rendered or to be rendered and/or conditions to be

8

MTC 001554

           maintained pursuant to this Agreement or the Residential Services Agreement;

    iii.    any claim for deprivation, damage or loss to any person or entity injured or sustaining personal and/or property damage resulting from or in any way arising from or out of MTC's negligence under this Agreement;

    iv.    any direct or indirect action or omission by MTC under this Agreement resulting in failure to observe, abide by or in any way afford to any person or entity all rights, privileges, immunities and entitlements relating to or having any basis in the United States or State of Mississippi Constitution, federal or State laws, regulations, ordinances or orders of the United States, Lauderdale County and/or the State of Mississippi;

    v.    any claim or loss related to a negligent act or omission of, by or towards Inmates proximately caused by or arising out of MTC's management or operation of the Facility; and

    vi.    any claim or loss for which a claim for relief is asserted or could be asserted under this Agreement pursuant to any State or federal statutory constitution, act or custom, including but specifically not limited to 42 U.S.C. §§ 1981, 1983, 1984 and/or 1985; the Americans with Disabilities Act, Fair Labor Standards Act and/or the Age Discrimination in Employment Act or any other State or federal law, or regulation.

    2.    Any and all costs, attorney's fees, expenses, losses and/or liabilities incurred in or about or as a result of the above claims, actions, or proceedings.

(b)    The duty to provide the indemnification and performance, as required or inferred herein shall arise immediately upon the signing hereof, with the additional requirement of immediate defensive action upon an Indemnified Party giving MTC notice of a claim, demand, notice of claim, demand letter, administrative, legal or equitable proceeding. The duty to defend and protect the Indemnified Parties, shall likewise so commence, and shall exist and continue even if the allegations of the claim or demand are false, fraudulent and/or wholly devoid of merit. In case any action or proceeding is threatened or brought against the Indemnified Parties by any entity upon the basis of any of the above, MTC, upon notice, shall immediately and lawfully react and defend against such action.

(c)    Neither party shall waive, release, or otherwise forfeit any possible defense the other party may have without the consent of such party relative to claims arising from or made in connection with the operation of the Facility by MTC. MTC and the Authority shall preserve all such available defenses and cooperate with each

9

MTC 001555

other to make such defenses available for each other's benefit to the maximum extent allowed by law.

(d) Notwithstanding the foregoing, MTC shall:
  i. not be responsible for any losses or costs resulting from litigation pending at the time this Agreement becomes effective or for lawsuits or claims arising thereafter relating to events or conditions that occurred or existed prior to the effective date of this Agreement. MTC agrees to cooperate with the Authority in the defense of such suits, if any.

  ii. not be responsible for defense of any post-conviction actions, including appeals and writs of habeas corpus filed by any Inmate challenging the underlying judgment of conviction or the administration of the sentence imposed.

  iii. have no obligation to insure, defend, indemnify, or hold harmless the Indemnified Parties from any claim arising out of or relating to any State or Authority policy, order, internal management procedures, financial procedures, court orders, administrative rules, and governmental requirements of law, which govern MTC relative to the custody and supervision of Inmates (collectively, "Imposed Requirements"). Additionally, the obligations, indemnities, and liabilities assumed by MTC under this paragraph shall not extend to any liability caused by the negligence of the Indemnified Parties.

(e) This Section will survive the expiration or termination of this Agreement.

**Section 6.2 Indemnification of MTC By the Authority.** The parties understand that current law may not allow the Authority to indemnify MTC under this Agreement however, to the extent allowable by the laws of the State of Mississippi, the Authority shall indemnify and hold MTC, its officers, directors, agents and employees harmless of, from and against:

(a) a breach or default on the part of the Authority in the performance of this Agreement;

(b) a claim or loss to any person injured or property damaged solely and exclusively by the wrongful acts or omissions of the Authority, its officers, directors, agents or employees (other than MTC and MTC's directors, officers, agents or employees) in the performance of this Agreement; and

(c) a claim or loss to any person based on a failure attributable solely and exclusively to the Authority, its officers, directors, agents or employees, to observe the laws of the United States and the State of Mississippi.

**Section 6.3 Insurance.**

(a) For as long as this Agreement is in effect, MTC shall procure and maintain continuously in effect, with respect to the Facility and operation of the Facility,

10

MTC 001556

insurance against liability for injuries to or death of any person or damage to or loss of property arising out of or in any way relating to its maintenance, use or operation of the Facility or any part thereof. Such insurance shall include at least ▇▇▇ dollars ▇▇▇ of liability insurance as specifically required in Section 47-5-1219 of the Act. The net proceeds of such insurance shall be applied toward extinguishment or satisfaction of such liability and all costs with respect to which such insurance proceeds may be paid.

(b) For as long as this Agreement is in effect, MTC shall procure and maintain continuously in effect, with respect to the Facility and to the extent of the full insurable value of the Facility including contents (other than the land and building foundations), all-risk insurance, including coverage from damage from riot, earthquake, flood (if the Facility is in a flood plain) and rain, subject only to the standard and customary exclusions contained in the policy, in such amount as will be at least sufficient so that a claim may be made for the full replacement cost of any part thereof damaged or destroyed. Such all-risk insurance policy shall be available to repair and/or rebuild the Facility under all circumstances after the occurrence of an insured peril. Such policy shall not include any co-insurance penalty, and full payment of the proceeds of such policy up to the amount of the policy dollar limit in connection with damage to the Facility shall not, under any circumstances, be contingent on the degree of damage sustained at any other facilities owned or leased by MTC.

(c) MTC shall procure and maintain continuously, for so long as this Agreement is in effect, insurance against the interruption of business, relating to the Facility and/or its operation or use, in such amount as will provide sufficient moneys to pay operating, administrative, and maintenance expenses during the period of such interruption of business (up to a maximum period of six (6) months). Such insurance shall be carried in the name of MTC, and the Authority and Department will be given additional interests as described on the certificate of insurance.

(d) All insurance, required to be maintained by MTC pursuant to this Section, shall be acquired and maintained with a responsible insurance company (rated "A" by A.M. Best or in one of the two highest rating categories of Standard & Poor's Ratings Service and Moody's Investor's Service, Inc.) organized under the laws of one of the states of the United States and qualified to do business in this State, and shall contain a provision that the insurer shall not cancel or revise coverage thereof without giving at least 30 days prior written notice to MTC. Said insurance shall adequately:

1. protect the State and the Authority from actions by a third party against the State, the Authority, and/or their respective employees, agents, independent contractors, subcontractors and/or board members, as a result of or relating to this Agreement; and

11

MTC 001557

    2.    protect the State and the Authority against claims arising as a result of an occurrence during the term of this Agreement.

MTC's duty of defense and indemnity to the Indemnified Parties required by this Agreement shall <u>not</u> be limited to the insurance policies and insurance proceeds obtained by MTC under the provisions of this Agreement including Section 6.3 hereof.

**Section 6.4**    **Certificate of Insurance.** During the performance of this Agreement, MTC shall maintain the plan of insurance set forth in Section 6.3 hereof, and submit a Certificate of Insurance to the Authority, for the mutual protection and benefit of the Authority and the Department, naming the Authority and Department as additional insureds and entitled to all notices issued under such policy, to cover those claims set forth in Section 6.1, whether the same be by MTC, a subcontractor or by anyone directly or indirectly employed by any of them or by anyone for whose acts any of them may be liable.

**Section 6.5**    **Workers' Compensation and Unemployment Insurance Compensation.** MTC shall maintain such workers' compensation insurance and unemployment compensation as required by the laws of the State of Mississippi, and provide to the Authority and Department a copy of the Certificate of Insurance.

**Section 6.6**    **Defense/Immunity.** By entering into this Agreement, the Authority and Department do not waive any defense nor does the Authority or Department waive any immunity, which may be extended to it by operation of law, including any limitation on the amount of damages.

**Section 6.7**    **Notice of Claims.** Within five (5) working days after receipt of Summons or notice of claim by the Authority and/or Department or any agent, employee or officer, pursuant to which the Authority and/or Department intends to exercise its indemnification right under Section 6.1, the Authority and/or Department shall notify MTC in writing of the commencement thereof. The notice requirement is intended to ensure that MTC's defense of the claim is not harmed by failure to comply with any notice requirements. Failure to comply with said notice requirements can result in MTC's refusal to indemnify, the Authority and/or Department or any agent, employee or officer if such failure to notify results in a prejudice to MTC or any agent, employee, officer or independent contractor. MTC will provide the Authority and/or Department similar notice of claims.

## ARTICLE VII
## EVENTS OF DEFAULT

**Section 7.1**    **Default by MTC.** An Event of Default on the part of MTC will be a material failure to keep, observe, perform, meet or comply with any material covenant, agreement, term, or provision of this Agreement, and, to the extent applicable, the Residential Services Agreement, which failure continues for a period of thirty (30) days after MTC has received a written notice of deficiency from the Authority.

MTC 001558

Section 7.2   **MTC Opportunity to Cure**. In the event of a notice from the Authority, pursuant to Section 7.1 hereof, and MTC reasonably believes: (a) that such Event of Default cannot be cured within the period allowed to cure such Event of Default in Section 7.1 hereof, and (b) that such Event of Default can be cured, through a diligent, on going and conscientious effort on the part of MTC, within a reasonable period not to exceed ninety (90) days, unless extended by the Authority, then MTC may, within the cure period, submit a plan for curing the Event of Default to the Authority (which plan shall show in detail by what means MTC proposes to cure the Event of Default). Upon receipt of any such plan for curing an Event of Default, the Authority shall promptly review such plan and, at its discretion, allow or not allow MTC to pursue such plan of cure. If the Authority does not approve the plan, the Authority may proceed with the remedies set forth in Section 7.4 hereof. However, the time period set forth above shall be tolled during the period of time a request for an extension of the cure period is pending before the Authority. If the Authority accepts the plan, the Authority agrees that it shall not exercise the remedies set forth in Section 7.4 hereof with respect to such Event of Default for so long as MTC diligently, conscientiously and timely undertakes to cure the Event of Default in accordance with the approved plan.

Section 7.3   **Default by the Authority**. Each of the following shall constitute an Event of Default on the part of the Authority:

(a)   Failure by the Authority to cause to be paid, within forty-five (45) days after payment is due, any payment required to be paid pursuant to this Agreement, provided that such failure to pay shall not constitute an Event of Default if the State has withheld any payment. In the event the State withholds such payments pursuant to statutory authority, MTC shall notify the Authority as soon as possible.

(b)   Failure by the Authority to observe and perform any material covenant, condition or agreement on its part to be observed or performed, or its failure or refusal to substantially fulfill any of its material obligations hereunder, unless caused by the default of MTC or the Department, and unless cured by the Authority within thirty (30) days after receiving written notice thereof.

Section 7.4   **Remedy for Default**. Upon an Event of Default, the non-defaulting party may terminate this Agreement. If termination is the remedy for default, the non-defaulting party will give the defaulting party notice of termination, with said termination effective no less than thirty (30) days from the date of receipt of notice.

Section 7.5   **Unavailability of Funds**. The payment of money by or for the Authority under any provisions hereto is contingent upon the availability of funds pursuant to the Residential Services Agreement.

Section 7.6   **Termination Due to Third Party Action**. In the event that through no fault of MTC, any court order is issued enjoining the use of all or a substantial portion of the Facility for the incarceration and/or treatment of Inmates, this Agreement shall terminate without penalty to any party, effective as the date that such injunction becomes effective. In any event, MTC shall be entitled to compensation for each day up to the termination date.

MTC 001559

Section 7.7   **Force Majeure.** No party shall have any liability to the other hereunder by reason of any delay or failure to perform any obligation or covenant if the delay or failure to perform is occasioned by Force Majeure.

Section 7.8   **Interference.** In the event this Agreement terminates, MTC agrees not to interfere with the Authority or its assigns in obtaining another contractor to perform the services provided for in this Agreement.

## ARTICLE VIII
## ASSIGNMENT

Section 8.1   **Assignment.** Because MTC was chosen as the operator party hereto due to its unique and highly regarded ability in the field, it shall not have any power to assign or contract away this Agreement or any part hereof, except it may utilize resources of its subsidiaries. However, the Authority may freely assign this Agreement and its rights and obligations under this Agreement to the Department, to another Lauderdale County entity or to a related non-profit entity (existing or to be formed). Any assignment other than described above, whether by the Authority or MTC, shall require the written consent of the other party, which consent shall not be withheld unreasonably.

## ARTICLE IX
## MISCELLANEOUS

Section 9.1   **Authority to Contract.** The Authority has the power to enter into this Agreement pursuant to its Articles, bylaws and House Bill 1719, Local and Private Laws of the 1996 Regular Session of the Mississippi Legislature. MTC, is qualified to do and conduct business in Mississippi and is authorized to enter into and comply with this Agreement.

Section 9.2   **Headings.** The headings contained herein are for convenience only and are not intended to define or limit the scope or intent of any provision of this Agreement.

Section 9.3   **Governing Law.** The validity of this Agreement, the construction of its terms, and the interpretation of the rights and duties of the parties hereto shall be governed by the Constitutions of the State of Mississippi and the United States of America.

Section 9.4   **Notices.** Any notice required or permitted herein shall be given in writing and shall be delivered by United States mail, first class postage prepaid return receipt requested, to:

(a)   East Mississippi Correctional Facility Authority
      Post Office Box 1301
      Meridian, Mississippi  39302

14

MTC 001560

with copy:

Hammack, Barry, Thaggard & May, LLP
505 Constitution Avenue
Meridian, Ms 39302

(b)  Management & Training Corporation
ATTN: Senior Vice-President, Corrections
500 North Marketplace Drive
Centerville, Utah 84014

**Section 9.5   Successors.** This Agreement shall be binding upon and inure to the benefit of the respective parties and their permitted assigns and successors in interest.

**Section 9.6   Severability.**

(a)  Should any term or provision hereof be deemed invalid, void or unenforceable either in its entirety or in a particular provision or application, the remainder of this Agreement shall nonetheless remain in full force and effect and, if the subject term or provision is deemed to be invalid, void or unenforceable only with respect to a particular application, such term or provision shall remain in full force and effect with respect to all other applications. If, however, any court of competent jurisdiction should render a final judgment that the authority granted to MTC from the Authority exceeds the bounds of permissible delegation under applicable law, the parties agree that this Agreement shall be deemed amended, modified and reformed to the extent necessary to reduce the scope of authority so delegated and to limit that authority to that permissible under applicable law.

(b)  The parties agree that, in no event, shall any determination that the discretion and authority granted to MTC hereunder exceeds permissible bounds results in this Agreement being declared or adjudged invalid, void or unenforceable in its entirety; rather, the parties request that any court examining such issue employ great latitude in reforming the Agreement so as to make this Agreement, as reformed, valid and enforceable.

**Section 9.7   Waivers.** No waiver of any breach of any of the terms or condition of this Agreement shall be held to be a waiver of any other or subsequent breach; nor shall any waiver be valid or binding unless the same shall be in writing and signed by the party alleged to have granted the waiver.

**Section 9.8   Counterparts.** This Agreement may be executed in multiple counterparts, each of which shall constitute but one agreement.

**Section 9.9   Equal Employment Opportunity.** The parties ascribe to principles of equal employment opportunity to include, but not limited to, racial, ethnic and cultural diversification.

15

MTC 001561

Section 9.10  **Amendment**.  This Agreement may be amended in writing only by the Authority and MTC.

Section 9.11  **Entire Contract**.  This Agreement is the entire agreement between the parties. Any additional amendment of or to this Agreement must be in writing and signed by both parties hereto to be effective.

Section 9.12  **Third Party Rights**.  The provisions of this Agreement are for the sole benefit of the parties hereto and shall not be applied, construed or interpreted as conferring any right or standing on any other person.

Section 9.13  **Order of Precedent**.  In the event there are conflicts with provisions in this Agreement, ACA Standards or the Act or other laws and regulations, the Act, laws and regulations will take precedence followed by this Agreement and the ACA Standards. If there is a conflict between this Agreement and the Residential Services Agreement, the Residential Services Agreement terms shall take precedent. The parties to this Agreement agree and hereby acknowledge that the execution of the Residential Services Agreement between the Department and the Authority has been done and is a condition precedent to the parties' performance pursuant to this Agreement.

IN WITNESS WHEREOF, the parties have executed this Agreement on the date first written above.

EAST MISSISSIPPI CORRECTIONAL FACILITY AUTHORITY



Its: ▮▮▮▮▮▮▮▮▮▮▮▮

Attest:



16

MTC 001562

MANAGEMENT & TRAINING CORPORATION

By: ███████████████████████

Its: ~~Senior VP~~

Attest:

███████████████████

████████████████████████

17




MTC 001564